Good morning, Judge Pius, Judge Fletcher, Judge Berzon. May it please the court, my name is Taras Gick, that's my colleague and co-counsel Thomas Siegel, and we represent Ms. Weneesa Cole in the certified class of 1.4 million California consumers in this matter. The court sent us a question a couple of weeks ago, and I think that's a good place to start because it does flow into the legal issues present here this morning. And the question was, would end bank review be required or not? And the answer is, it depends. It depends on this. It's clear that a case in this circuit can be considered superseded by intervening law. Right, what would you consider the intervening law? First of all, which case are we talking about? Wolsey? Yes, we're talking about Wolsey. But Wassil, you're relying on Wassil. Well, we're relying... You're not relying on Wassil. We're saying that because Wolsey has been superseded by both Kyocera, where this court sat in bank, and two of the judges were on that end bank panel that are on this panel, as well as adopted by the United States Supreme Court, the very holding that I'd like to get into in a minute in Kyocera was adopted by the United States Supreme Court verbatim. I mean, Hall Street versus Mattel in 2008. So it's not controversial to start with the proposition that if there's intervening law that's superseded a district court's holding, it's considered no longer good law. Two things about that. I'm sorry. So are you arguing that because of Kyocera and Hall, you don't need to rely on Wassil anymore with regard to the fact that California says that arbitration is not... that this kind of dispute resolution, I hesitate to even call it non-binding arbitration, is not FAA arbitration? Yes, we're absolutely arguing that. I thought you were relying on Wolsey. Wolsey's not binding. Correct. But secondly, I mean, I think there's some core as to which there's some analogy to Kyocera and Hall, but the conclusion in Kyocera and Hall, as I understand it, isn't that the FAA doesn't apply. Right? No, it's actually, from our perspective, really on all fours. And I think what's important to understand... That's the answer to my question, though. Isn't the answer to Kyocera... isn't what Kyocera and Hall held is that the FAA applies and therefore you can't have this special kind of review, not that the FAA doesn't apply. So it might be what would happen if you were right is that you would wash out the novel part of the contract and you'd just be stuck with the arbitration. The question directly presented to this court in Kyocera, as well as to the Supreme Court in Hall Street v. Mattel, was the question of what is FAA arbitration. That was the question presented. In Kyocera, what happened was the district court vacated an arbitration award based on a review that was written into the binding arbitration contract that allowed a substantial evidence review or legal error review, which is prohibited by the Federal Arbitration Act, which limits vacating an award to very strict reasons far more narrow than that, including bias and so forth. And what the court held in Kyocera was specifically that broad judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process. And it said, no, you can't get this expanded judicial review. And therefore what? And therefore it defined what is binding arbitration under the FAA. And since you're stuck with it, rather than saying, all right, you're now out from under the FAA, it says you're now stuck with what the FAA provides. And you want out from under the FAA. You don't want to say, all right, we're going to read this as being FAA arbitration. Well, that would get into a related question of can that clause be severed out to create a different creature entirely than what was contracted to. So to answer your question, Your Honor, I think we can look to Hall Street. Actually, we can look to Justice Scalia's words in Concepcion itself, where Justice Scalia points out your exact statement in a different way. He says you can contract to anything you want. You can contract to parties agreeing to arbitrate to the federal rules of civil procedure. You can contract to a discovery process rivaling that in arbitration. Arbitration is a matter of contract, and the FAA requires courts to honor parties' contracts. But what the parties in the aforementioned examples would have agreed to is not arbitration as envisioned by the FAA, lacks its benefits, and therefore may not be required by state law. So in Concepcion, Justice Scalia is saying, yes, you can contract for this if you want it, but it's not FAA arbitration then. And if we look at Kiyosera and we look at Hall Street, where the Supreme Court in this court and Bank said no, when you have expanded review, that's not FAA arbitration. If we compare what happened in those two cases to what is FAA arbitration, maybe it's halfway up the spectrum away from it. If we compare to what the defendants are trying to use in this case and claim it's FAA arbitration preemption, it's completely on the opposite end of the spectrum. It's far beyond what this court rejected in Kiyosera and what Hall Street rejected and what Concepcion rejected. Speaking of Justice Scalia and the question I started with, I'd like to reserve five minutes for rebuttal if I may. On bank review, Justice Scalia is actually quoted by this court in the leading decision in this circuit on when bank review is proper, and that's Miller v. Gammy. At 900, the court approvingly quotes Justice Scalia, the author of Concepcion, who goes on to explicate the reasons for the holding in Concepcion, as having said in a law review article, lower courts are bound not only by the holdings of higher courts' decisions, but also by their mode of analysis, the explications for the holdings. If we then look at Concepcion, the holdings are abundant that the purpose of FAA arbitration is explicated to be the resolution of a case, finality. We cite those at length in both our opening brief and our reply brief, but for example, the overarching purpose of the FAA evident in the text of sections 2, 3, and 4 is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. That's Justice Scalia explicating on the reason for finding, for getting to the holding. Another question.  Wassell, I mean, another route to where you want to go, and I understand that you're not asking us to follow it now, but it's still sitting out there, is we have Wassell saying that you look at state law as to what arbitration is, and if you look at California law, it's pretty definitive that this is not it. But isn't that just wrong, too? Aren't Woolsey and Wassell both wrong, from your point of view? No, they're not wrong, and just to correct one statement about our position. They may be both wrong in ways that might help you if we were to conclude that there's a federal standard, but that Woolsey got the federal standard wrong, and that non-binding arbitration is not arbitration within the meaning of the FAA. Let me say this about Wassell and Portland and answer your question as directly as I can. Just the concurring judge in the opinion said, boy, and Portland actually said, I have to follow it, I'm bound by it, even though I don't like it. But in reality, if you look at the Federal Arbitration Act, there is no definition of arbitration. So the Federal Arbitration Act arose when? In 1925. So the only thing that existed before 1925 was state common law defining arbitration. Since then, there is no definition of arbitration that's been added. So this court in Wassell and Portland did not do something which, in my opinion, the concurring judge thought was wild-eyed. He said, okay, there's no definition in the FAA of what arbitration is, so we look to state law. You look to state law, California state law is clear, binding arbitration is arbitration. But it's very, very peculiar to be looking at state law to decide what arbitration is when you don't look to state law for anything else about the Federal Arbitration Act. The whole point is that the Federal Arbitration Act has now been declared preemptive of state law. So if it's preemptive of state law, how can you go to state law to get the definition of what it's covering? The concern would be that you have different rules in 50 different states theoretically as to what arbitration is. The concern would be that it might make sense in an instance in which you're not looking for a uniform federal regime. But the whole point of the last 30 years of FAA cases is, you know, they sort of pulled this rabbit out of a hat, where they all of a sudden start preempting state law with this statute. And if you're going to preempt state law, then you can't use it to preempt itself. It's preempted. The Discover Bank rule is what was preempted. That's not the only thing that was preempted. Well, it has attributes. Everything else was preempted, too. It has to have attributes. So the only further thing I want to say about Wausau and Portland is, none of the attributes in California state definition of arbitration are contrary in terms of its binding resolution. So if anything, there will be an equal weakness or a far greater weakness in actually applying WALSEI under that concern, because WALSEI is at odds with every circuit practically, as well as the Supreme Court. But not every circuit, right. So I think that the result is the same under whether you analyze it under WALSEI being superseded or under Wausau-Portland. The result remains the same. The other way to not need to go en banc is there's a very serious question here that we raise of waiver. There were over 800 docket entries at the time the motion to compel arbitration was granted. The motion was brought only on the ground of federal preemption, and it was granted by Judge Reel, the district court. But the reality... That was after Concepcion had come down, right? Right. But what's unique about this case, and this is another way to resolve it, if you want, without going en banc, is that the defendants in this case moved very early in the case, January 13, 2007, and argued that this non-binding arbitration clause is enforceable under California law. Because it allows a party to subsequently maintain a class action, and this is in the excerpts of record at 687 and 665. Exactly. So how could they have waived it? I'm sorry? Since they raised it early on and essentially lost, at least in part, how could they have waived it? They waived it for this reason, Your Honor. You're saying because they could have appealed it. No. Well, that's one of the things. But there's much more than that in the excerpts of record. What they did was they entered into a stipulation where only the named class representative would need to go to a non-binding arbitration. That process took us over a year. I thought that the... Well, go ahead. Then, more than a year later, after they brought further motions to dismiss and summary judgment, they entered an answer. In their answer, they don't raise arbitration as an affirmative defense. A year after that, we moved for class certification. They did not raise arbitration as an affirmative defense. They stipulated to a trial date after the Supreme Court, to a jury trial date after the Supreme Court had granted cert review in Concepcion. I thought that they actually did file a motion for reconsideration saying that everybody should have to exhaust. And the trial court said no. But in denial of a motion to reconsider, and it wasn't really a motion to arbitrate, it wasn't clear that that was an immediately appealable order. So I'm not sure where your stipulation fits into this story, but they did... There were five separate opportunities for review that we point out in our briefing of that order. You mean an appeal? Is that what you mean? They could have gone interlocutory. Their motion to dismiss, and there's case law we cite on point, argued that the class arbitration should be stricken. That was directly appealable. And there are a couple of other reasons as well that that was waived. The test is set out... May I do that in rebuttal, or I'll find it while I'm sitting? The test is set out by the Gutierrez Court, which Judge Fletcher knows very well, on waiver, which is an existing right to compel arbitration, knowledge of it, acts inconsistent with the existing right, and prejudice to the party. Here, I don't think there's any reasonable argument that all of these exist. Then finally, just so that I'm allowed to talk about it in rebuttal, in case somehow, pasturally, this case gets back down, not in favor of the plaintiff, this is still a very important issue that does need to be resolved under the case of Peleg v. Neiman Marcus. We have a dispute. It's part of the Landis stay that there are... The defendant maintains there are about 100,000 people not subject to the arbitration clause. We maintain it's about 400,000. The difference in the two numbers arises from the fact that on 300,000 of the people, the arbitration clause at issue was imposed subsequent to rights which already had accrued and existed. So to whatever extent the Court has further questions on that, I'll be prepared to address them. Okay. Well, we've taken you over. Let's hear from the other side, but we will give you a chance to respond. Thank you, Your Honor. May it please the Court, Joe Smith and Vince Bucola for the defendants who are now the Appellees, Asherian and T-Mobile. I'd like to address three issues before the Court. Application of the FAA, unconscionability and waiver. First on application of the FAA, I think we should start with the statutory imperatives. And I think they boil down to two. Why don't you just start with do you think we need to go on bunk? No. To me, if you follow Woolsey, it takes you in one direction. If you follow the earlier case, it takes you in another direction. And to me, it's not reconcilable. And when we have a situation like that, when I'm faced with the choice, what case do I follow? Do I follow this one? Do I follow that one? The proper thing for us to do is to ask for an initial, for the panel to call for an initial hearing on bunk to resolve the conflict. Right. I understand, Your Honor. I think you can resolve or harmonize those two cases. And I would get there. In this case, they lead in completely opposite directions, do they not? I don't think so. Why not? Woolsey answers the ultimate question here, is non-binding arbitration, arbitration under the FAA. And Walsall says, well, you can't be doing that because you're supposed to be looking at state law, and state law says it's not. I think substantively what Walsall's doing is clarifying the contract, not clarifying the FAA. That's where I think you have an opportunity to harmonize them. And that's consistent with the federal law, back to the statutory imperatives. The first is enforce the arbitration agreement according to its terms. That's the first. The second is resolve all doubts in favor of the FAA applying. And interestingly, that's a point that both Walsall and Woolsey, they quote the Moses Cone case on that specific point, resolve all doubts in favor of the FAA applying. And I think that's substantively what Walsall is doing. They are looking at an agreement that does not say the word arbitration, unlike the agreement in this case. Well, it is when they say the word arbitration, but that's sort of a red herring. I mean, you could also call it, and more properly so, something like, you know, it's alternative dispute resolution, but whether it's non-binding arbitration sort of assumes the answer. Yes, Your Honor, I think you're right about that. I was saying in Walsall there was a contract that didn't use the word arbitration at all and was an appraisal process. So it wasn't the submission of legal claims. It was the submission of an expertise question to an appraiser. And that's what I think the court was struggling with. But in answering that question, though, the court looked directly to the FAA. Well, the controlling law is the FAA. Looked directly to state law, right? And they were looking to state law as a tool to resolve doubt. And I think state law can be a tool to resolve doubt, except it has to do what the Moses Cone case said. You have to resolve doubts in favor of the FAA applying. So state law could be a tool to take you there, but it can't be a tool to take you away from the FAA applying. Consider this analogy. It's like what a court does when presented with a complaint on a motion to dismiss. Construe everything in favor of the claimant. That's what you do under the FAA. You construe everything in the document in favor of the FAA applying. And I think that's what Walsall was doing substantively by reference to state law. Whereas in PG&E, it turned out that referring to Oregon state law was of no avail because it did not resolve an ambiguity in favor of applying the FAA. So that's taking me back to the point. I think that's how you can harmonize the two and why we would say you need not go en banc to do that. Woolsey remains good law, recognized or acknowledged as recently as 2010 in PCORNY. And it rests on good rationale. That being the independent third party decision maker, that it's pursued to completion before litigation, and that the FAA itself doesn't say anything about the arbitration being binding. Well, it says it's supposed to settle the dispute. And if you look at the AAA rules which apply both in Woolsey and here, the AAA treats non-binding arbitration as a species of arbitration that does promote settlement. It may promote it, but it doesn't settle it. Well, it often settles it. Well, but it doesn't settle it. It doesn't. You don't have to accept it. Right. Just isn't what happened here, as I understand. I don't know what the relevance of, I mean, the FAA, the AAA does a lot of other things too. It does mediation, but I don't know what that proves. Right. But that is treated separately from non-binding arbitration under the AAA rules. Last point, just on, not the very last point, but on the issue of Woolsey being correct, let's say, or at least applicable. I think it's important to consider that Woolsey was on the books when this contract, in this case, was written. In fact, the FAA's imperative of honoring the party's expectations that Woolsey in this circuit was. It may well be a binding agreement. It is a binding agreement, but that doesn't answer the question of whether it's covered by the Federal Arbitration Act special rules. Well, I think it helps to answer that question because the FAA's overriding purpose is to honor arbitration contracts as creatures of contract. So you're protecting the party's expectations. But obviously, then the question is what does an arbitration agreement mean? So it doesn't help you. And I assume the contract is nationwide uniform. Is that right? Yes. So your argument would be that it either is or is not within the scope of the FAA, depending on what circuit you're in? That's the current state of the law. And that was the expectation of the contracting parties? Because you're coming back to expectations of the contracting parties. Right. So you get a different answer if you're in Ohio? On the current state of the law, you would have different answers in different circuits. That's right. You think that's a good idea? Well, whether it's a good idea, I mean, all in all, perhaps not. But it's the current state of the law. There's going to be, I think, Judge Berzon, you were headed here a little earlier, there will be a circuit split on this. Even if this court goes en banc, no matter which way you decide. Well, we have an eighth circuit. Tell me what the circuit, where is the circuit law at this point? There are basically four camps among the circuits right now. We have the Ninth Circuit and the Eighth Circuit answering yes. I thought the Eighth Circuit was a little fuzzier than that. It was not quite at holding. There are some fuzzy ones. I don't think the Eighth Circuit is among the fuzzy. So on my list, at least, I have the Ninth Circuit and the Eighth Circuit saying yes, non-binding arbitration is arbitration. Then there are a couple of circuits that basically are fuzzy, or say maybe, the Third Circuit and the Fourth Circuit. There are two circuits that say no, it's not arbitration. That's the First and the Tenth, although the Tenth is dicta. But it's in there in the Salt Lake Tribune case for the Tenth Circuit. And then there are five circuits, I think that would round us out to all of them, five circuits where there's no answer yet. Eleventh, Seventh, those two have expressly reserved the question. The Second Circuit simply hasn't reached it, and the district courts have noted that. Nothing at all in the Fifth Circuit, and there's an unclear, this might be the fuzzy one you're thinking of, decision in the Sixth Circuit, Evanston Insurance Company, 2012. So we're not close to uniformity, and that may not be the way the law will remain, but it's not going to be resolved by this Court switching the rule that was in place when the contract in this case was written. If I may say a few things about unconscionability. Under California law, in order for a contract to be unconscionable, it has to be both procedurally and substantively unconscionable. The burden, there's a lot of focus in the briefing from the other side about the burden of arbitrating individually, but that is no longer available as an argument after Concepcion, and this Court has acknowledged that. On the questions of whether the contract in this case could still be substantively unconscionable or procedurally unconscionable, the substantive question is whether it's one-sided or overly harsh, and here you have lots of provisions that make it very fair to the subscriber. You hold the arbitration where the subscriber lives. The fees are advanced by the providers, by my clients, if there's a request for them to do so. Unconscionability and unfair are not synonymous terms. I don't regard this actually as very fair, that is to say it's a very one-sided deal. It may, however, not be unconscionable. Right. That's right, Your Honor, and maybe that's... However, I'm not sure I have to agree that it's fair, and I don't. Okay, okay. But I don't think it's necessarily unconscionable. Right. That's a fair distinction, so to speak. So that's on the substantive side, is one-sidedness is really what I wanted to focus on. I should use that word because that's the word of the jurisprudence. Procedural unconscionability is whether there's surprise, and I think one of the best cases to show what surprise would be was Kilgore, where the guy thinks he made a contract with Toyota to buy a car. It ends up he's in a contract with Sirius to have satellite radio, and something came in the mail saying that later, so that surprised him. Here there's really no dispute that the provision was in place, and Ms. Cole knew about that. It's conspicuous in the contract, like in Kilgore. The procedures are very conventional, the AAA procedures, and the contract itself says it's governed by the Federal Arbitration Act, which is something we shouldn't lose sight of, both in terms of honoring the party's expectations, but also in analyzing unconscionability. I would just like to interrupt for a moment and ask you to just be sure to get to the waiver issue at some point, and you don't have that many points left. Yes. You just said waiver, right? Yes. Okay, that's what I thought you said. I had a little trouble hearing. I'm not asking you to stop this, but just to get there. In fact, I'm ready to talk waiver. Let's start, of course, Ms. Cole has the burden, and it's always called a very heavy burden, to prove waiver. So if we're teetering on whether there's waiver, that, I would say, is not enough. The burden is distinctly hers, and it's a tough burden. Mr. Kick is right. The question is, was there knowledge of an existing right at the time that the defendants did not assert? Answer, no, because Concepcion was decided later, and we moved right after Concepcion was decided. Did we take any action? Gutierrez seemed to say that wasn't necessarily good enough. I mean, do it comparing to Gutierrez. It doesn't have to be a known right. It has to be a known non-right, right? Gutierrez is such an extreme example, but waiting until you're done with a trial on the merits to assert what was always an optional right to arbitration. It carries with it the essence of surprising the other side or sandbagging the other side. And here, by contrast, the defendants all along asserted this right in various contexts. It did keep coming up, and the standard for waiver is not whether you could have done something more. I mean, you can basically always keep arguing, keep dropping footnotes, et cetera, but that's not what's required. This was always a very straightforward assertion of this right. The trial court disagreed. The defendants respectfully continued under the law of the case. And then when Concepcion was decided, and therefore a newly enforceable right was available, the defendants, you know, within a month asserted it, and the stay was issued. Was it within a month? I thought it was several months. I believe it was about a month later. So is the case effectively over when Judge Reel ordered that every class member have to submit to non-binding arbitration? No, Your Honor, in part because there are, while it's been certified as one class, there are really two sections of the class or two classes, as Mr. Kick made reference to. There are people whose agreements were rather with one underwriter. Then the underwriter changed. The terms changed. Some people continued into what becomes the larger part of the class. So the first part of the class, and this is why we note in our brief we might have to revisit the certification issue. The first part of the class does not have an obligation to arbitrate. So there are, this is where there's a little disagreement on the numbers. And I read your brief as essentially agreeing that the stay should be lifted for them. Should be, sorry? Lifted for them. Yes. The class needs to be, in your view, the class needs to be? Redefined. Redefined. Yes. Or a subclass at least. Insofar as their notion that there shouldn't have been stayed for those four, however many hundred thousand there are. Right. They're essentially right. Yes, Your Honor. And I would just add for clarity, we continue to believe that there are distinctions within that class that really make it unsuitable. But that's another question. That's right. That's right, Your Honor. That's all. Thank you very much. Thank you. Now, we took you over time. Why don't we put two minutes on the clock? Okay. Essentially, counsel's argument is that this court should find that non-binding arbitration is arbitration, that Woolsey is good law. Our position is that's not a reasonable holding for the reasons we've already covered. The circuits are overwhelming. It's not just the ones mentioned, but we cover this on page one of our reply brief and page 22 of our opening brief. The First Circuit, the Second Circuit, the Third Circuit, the Fifth Circuit, the Sixth Circuit, and the Tenth Circuit all are with the binding arbitration side. We say Chiesera and Hall Street and Concepcion all have superseded Woolsey. We don't think there's any reasonable reading under Concepcion of a non-binding arbitration clause that exists under the Federal Arbitration Act. The court in Concepcion went on about that. In Gutierrez, this court also held on an alternative ground why it would not enforce the arbitration clause at that time. It has nothing to do with it being an optional clause. Respondent misunderstands that. Either side could have demanded the arbitration and it would have been required. It's only optional in the sense you needed to demand it. But there, the court held in Gutierrez, independent of the Fisher analysis, which is the waiver analysis, arbitration at this juncture would frustrate the purposes of the FAA. It then goes on to quote Concepcion for the overarching purpose of the FAA being the streamlined proceedings to ensure them. So in terms of waiver, defendants, and we point this out on pages 10, 11, and 12 of our opening brief and 21 through 23 of the reply, defendants themselves argued that under existing California law, it was enforceable. The non-binding arbitration clause was enforceable. So there's no futility. Futility is already a high standard. The court in Concepcion, this court in rather Gutierrez, pointed out four holdings prior to Concepcion from this district, all of which enforced class action waiver provisions. And these defendants actually appealed in other matters, including team over. You're running over. I don't want to cut you off in mid-sentence, but if you've got a couple of summarizing remarks, that would be useful. Yes, Your Honors. The summarizing remark would be that if this court believes Woolsey remains good law, there's absolutely no argument that it's in conflict with Wazzell and Portland. Wazzell and Portland is not a narrow holding. It says, as the majority opinion correctly concludes, Wazzell accepted state law as binding and as supplying the meaning of the term arbitration in the FAA. That's from Wazzell and Portland. So if you don't think Woolsey's been overruled and you don't have an alternative ground on which to base your decision, then yes, you do need to go in bank to reconcile Wazzell and Woolsey because you have an intracircuit split, and that's an actual required ground. Okay. Thank you. Thank you. Thank both sides for their useful arguments. The case of Cole v. Assyrian Corporation now submitted for decision.
judges: Fletcher, Paez, Berzon